IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STACEY R. S., <br><br>   Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY,[1] <br> Commissioner of Social Security, <br><br>   Defendant. | Case No. 23-cv-00020-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Stacey R. S. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot,

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[2] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id*. § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[3] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.)

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits on January 29, 2021. (R. 190-203.) In her applications, Plaintiff alleged she has been unable to work since July 4, 2020, due to conditions including a mental issue, sacroiliac joint inflammation, fibromyalgia, sciatic nerves, and disc discord. (R. 190, 197, 253.) Plaintiff was 47 years old at the time of the ALJ's decision. (R. 26, 190, 197.) She has a high school education and past relevant work as a cosmetic salesperson and jewelry salesperson. (R. 50, 254.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 101-06, 110-16.) Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (R. 32-58, 117-18.) The ALJ denied benefits and found Plaintiff not disabled.

(R. 15-26.) The Appeals Council denied review on November 14, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4] Plaintiff now appeals.

### III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2025. (R. 18.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.*) At step two, the ALJ found Plaintiff had the severe impairments of obesity and a lumbar spine condition with radiculopathy. (R. 18-19.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 19-21.)

The ALJ then determined Plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except, in an 8-hour day, she can stand and/or walk for a total of 4 hours. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally climb ramps and/or stairs, but she cannot climb ladders, ropes, or scaffolds. She can occasionally push and/or pull with the bilateral upper and lower extremities. She can frequently reach in any direction with the bilateral upper extremities. She cannot work at unprotected heights or around moving mechanical parts or dangerous machinery.

(R. 21.) The ALJ provided a recitation of the evidence that went into this finding. (R. 21-24.) At step four, the ALJ found Plaintiff unable to perform her past relevant work. (R. 24.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as price marker, small products assembler, and routing clerk. (R. 25-26.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 26.)

---

[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

**IV.  Issues**

On appeal, Plaintiff asserts the ALJ erred in her assessment of: (1) Plaintiff's symptoms (ECF No. 10 at 4-7); (2) Plaintiff's capacity to lift, carry, and sit in the RFC (*id.* at 7-9); and (3) the opinion of Laurel Williston, M.D. (*id.* at 9-10).  The Court finds no reversible error and affirms.

**V.  Analysis**

 **A.  Plaintiff's Symptoms**

Plaintiff first takes issue with various reasons the ALJ gave for discounting her statements regarding the intensity, persistence, and limiting effects of her symptoms, and with how the ALJ's decision was explained.  (*Id.* at 4-7.)  The Court finds no error in the ALJ's overall symptom analysis or in the specific issues Plaintiff raises.

  **1.  Symptom Evaluation in General**

The regulations define "symptoms" as a claimant's "own description" of their "physical or mental impairment." 20 C.F.R. § 404.1502(i).[5]  When evaluating symptoms, the ALJ uses a two-step process.  *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.[6]  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the symptoms so she can determine how they limit the claimant's capacity to work.  *Id.* § 404.1529(c)(1).

---

[5] *See* 20 C.F.R. § 416.902(n) for Title XVI.
[6] *See generally* 20 C.F.R. § 416.929 for Title XVI.

Factors the ALJ should consider as part of this evaluation include: (i) daily activities; (ii) location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication; (v) treatment aside from medication; (vi) measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to the symptoms. *Id*. § 404.1529(c)(3)(i)-(iv). The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence [she] relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

That is not to say the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, at *10. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*.

Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

6

## 2. The ALJ's Symptom Evaluation in this Case

Here, the ALJ adequately accounted for Plaintiff's symptoms. After determining Plaintiff's impairments at step two (R. 18), the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause . . . [her] alleged symptoms" (R. 22). Next, the ALJ considered whether Plaintiff's subjective statements regarding her impairments, when evaluated alongside other objective evidence, led to the conclusion that Plaintiff was disabled. Specifically, the ALJ weighed Plaintiff's daily activities (R. 22-23[7]); the location, duration, frequency, and intensity of her symptoms (R. 22-24[8]); precipitating and aggravating factors (R. 22-23[9]); the type, dosage, effectiveness, and side effects of medications (*id.*[10]); the other treatment she received for

---

[7] The ALJ discussed Plaintiff's testimony that she worked only part-time due to her pain; needed rest breaks and the option to leave early from 3-to-4-hour shifts; spent 70-to-75 percent of her day reclining in a chair; did not often shop for groceries (and used a motorized cart when she did); prepared simple meals but burned herself due to balance problems; and had her husband help with self-care. (R. 22.) The ALJ also discussed treatment notes from 2020 indicating that Plaintiff was independent in her daily activities. (R. 23.)

[8] The ALJ noted Plaintiff's testimony regarding pain in various locations, tingling and numbness, and issues falling; Plaintiff's reports (or lack thereof) to doctors regarding back pain, improvement with medication, independence in daily activities, issues falling, and neck or upper extremity symptoms; physical examinations showing abnormality in gait, reduced range of lumbar motion, and positive straight leg raise tests; physical examinations showing Plaintiff's comfort and no abnormalities in gait, balance, muscle strength, or reflexes; and examinations showing no abnormalities or functional limitations in the neck or upper extremities. (R. 22-24.)

[9] The ALJ noted Plaintiff's aggravating factors of prolonged standing, working, and her weight. (R. 22.) The ALJ also noted the effects of Plaintiff's obesity. (R. 23.)

[10] The ALJ noted a prescription of Cymbalta, which helped with Plaintiff's pain and depression. (R. 22-23.)

7

symptom relief (*id.*[11]); and other factors concerning Plaintiff's functional limitations and restrictions due to pain (R. 22[12]).

Only in light of this analysis did the ALJ hold that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not wholly consistent with the record. This was an adequate evaluation under the regulations and SSR 16-3p. The Court rejects Plaintiff's arguments otherwise. (ECF No. 10 at 6-7 (wherein Plaintiff relies on SSR 16-3p to contend it was "unknown which allegations [of Plaintiff's] the ALJ found inconsistent" with the record).)

### 3. Plaintiff's Alleged Errors

In her brief, Plaintiff focuses in on certain individual findings and issues in the ALJ's decision. None of these alleged errors, however, identify fatal flaws in the symptom analysis.

#### a. Plaintiff's Conservative Treatment

First, Plaintiff briefly highlights the ALJ's observation that Plaintiff was only recommended "conservative" treatment, noting that, in fact, physical therapy and pain

---

[11] The ALJ noted that physical therapy and pain management—such as spinal cord injections—were recommended, but Plaintiff did not follow up on such recommendations due to concerns about cost and insurance coverage. (R. 22-23.) The ALJ also observed that Plaintiff's treating physician offered to assist Plaintiff in finding affordable care. (R. 23.) The ALJ noted that, generally, Plaintiff's medical providers recommended only conservative treatment for Plaintiff's pain symptoms. (*Id.*)

[12] In addition to the limitations discussed above, the ALJ noted Plaintiff's testimony that she could only work a few hours due to pain; could no longer dress mannequins or use a step stool; could not lift anything over 8 pounds; could not bend or handle anything; could only sit roughly 15-20 minutes at work due to an uncomfortable chair; could only be on her feet for roughly 30 minutes before needing to sit down; and could not exercise because of her pain. (R. 22.)

8

management were recommended but that she could not afford it. (*Id*. at 5.) Plaintiff implies the ALJ penalized her by failing to consider her lack of means.

But the ALJ did not do this. Instead, the ALJ noted Plaintiff's testimony that she "has not participated in physical therapy and has not received spine injections because insurance does not pay for the treatment and she cannot afford to pay for it" (R. 22) and credited the idea that Plaintiff "did not follow up with those [treatment] referrals due to concerns about cost and insurance coverage" (R. 23).

As opposed to ignoring Plaintiff's testimony, the ALJ was instead considering whether the <u>recommended</u> treatment was conservative, which is proper. "An ALJ can take note of the level of treatment in assessing a claimant's credibility." *Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 823 (10th Cir. 2011) (unpublished).[13] The ALJ's finding was supported by substantial evidence, particularly where the medication recommended was non-narcotic. *See Alarid v. Colvin*, 590 F. App'x 789, 794 (10th Cir. 2014) (unpublished) (upholding ALJ finding that treatment for back pain was conservative when involving medication and lumbar facet injections); *Ryan v. Colvin*, No. CV 15-0740 KBM, 2016 WL 8230660, at *3 (D.N.M. Sept. 29, 2016) (recommended treatment of physical therapy, weight loss, and home exercise was conservative); *cf. McCause v. Berryhill*, No. 16-CV-0032-CVE-GBC, 2017 WL 3172746, at *7 (N.D. Okla. July 26, 2017) (noting narcotic pain medication is not conservative).

### b. Plaintiff's Independence in Daily Activities

Plaintiff next complains that the ALJ improperly credited notations that she was "independent in daily activities." (ECF No. 10 at 5.)

---

[13] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

On September 14, 2020, Plaintiff presented with complaints of low back pain. (R. 328.) In the "history of present illness" portion of her exam file, she was noted as being "independent with simple daily activities." (*Id.*) Later, on October 6, 2020, she presented for a post-MRI visit and was similarly noted as being "independent with daily activities." (R. 334.) In her decision, the ALJ restated both of these notations but omitted the word "simple" from her recounting of the September exam. (R. 23.)

Plaintiff posits that the word "simple" is significant, even though the doctor chose not to use it in both notations. Without evidence, Plaintiff asserts that the doctor merely abbreviated the September notation during her October exam. Building on this supposition, Plaintiff asserts the ALJ ignored "significantly probative" evidence by not repeating the once-used word "simple."

It is true that, while "an ALJ is not required to discuss every piece of evidence," she must discuss the evidence that supports her decision, the uncontroverted evidence she chooses not to rely upon, and any significantly probative evidence she rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But here, there is no basis for Plaintiff's assertion that the use of the word "simple" in September 2020—when not repeated in October 2020—is uncontroverted, significantly probative, or otherwise not relied upon or rejected by the ALJ in her analysis. Therefore, there was no error in the ALJ not parroting this word.

### c.   Plaintiff's Comfort

Plaintiff next complains that the ALJ <u>correctly</u> repeated an observation from these very same appointments. (ECF No. 10 at 5.) Looking at the September and October 2020 exam notes, the ALJ observed that Plaintiff "presented as comfortable." (R. 23 (citing R. 329, 335).) Plaintiff's counsel goes through a series of logical leaps to divine that

patients often lie down in exam rooms; that Plaintiff's pain was least while recumbent; and that, therefore, this exam observation could not be inconsistent with Plaintiff's symptoms. (ECF No. 10 at 5-6.)

Even if Plaintiff is correct, the ALJ's consideration of this exam note came as part of a larger analysis. It does not rob the overall symptom evaluation of its substantial basis.

### d. The Lack of Physical Exams

Plaintiff next argues that the ALJ improperly noted a lack of physical exams when such exams were halted during the COVID-19 pandemic. (*Id.* at 6.)

After discussing the September and October 2020 exams identified above, the ALJ noted:

> Subsequent records after October 2020 indicate ongoing complaints of back pain radiating to the lower extremities. However, inconsistent with her testimony, the claimant did not report falling due to the symptoms. The notes contain few, if any, physical examination findings, such as an abnormal balance or gait, indicative of limitations from pain. In December 2021, the claimant reported improvement in her pain symptoms with medication. She reported increased back and leg pain in February 2022, but the clinical examination reflected no significant abnormalities in the claimant's presentation.

(R. 23 (citations omitted).) Plaintiff is correct that it would constitute an error if the ALJ had found her symptoms incredible simply because there were no physical examination notes from October 2020 to February 2022 as a result of the telehealth appointments Plaintiff had to attend due to COVID. However, when seen in context, this is not exactly what the ALJ did.

Instead, the ALJ noted (in a prior paragraph) the results of Plaintiff's September 2020 imaging, showing abnormalities in the lumbar spine. (*Id.*) The ALJ then noted that, in September and October 2020, Plaintiff's physical exams demonstrated some negative results (positive straight leg raise test and pain complaints with motion testing)

11

and some positive results (Plaintiff's comfort and no abnormality in her gait, balance, strength, or reflexes). (*Id.*) The ALJ noted Plaintiff's continued pain complaints between October 2020 and February 2022, but also observed a lack of examination findings indicative of pain. (*Id.*) Once Plaintiff next had a physical exam, the ALJ noted that the results showed no significant abnormalities. (*Id.*)

One interpretation of the ALJ's recounting of the record would be that she completely ignored Plaintiff's symptoms for this 1.3-year period because Plaintiff had no physical examinations. However, it appears the ALJ did something different. The ALJ found that—before the start of this period—when Plaintiff had physical exams, they did not completely support her symptom allegations. The ALJ also found that—after the end of this period—when Plaintiff had physical exams, they did not support her symptom allegations. In the middle, the ALJ found a lack of physical examination findings indicative of limitations from pain. Such examinations could have added support to Plaintiff's allegations, but it does not mean that their lack changed the ALJ's evaluation in any significant way. Given the dearth of physical evidence supporting Plaintiff's allegations during this time period (other than the pre- and post-period evidence considered by the ALJ), it is difficult to discern how further analysis of the telehealth medical notes would benefit Plaintiff. *See Thompson v. Colvin*, 551 F. App'x 944, 948 (10th Cir. 2014) (unpublished) (when the medical evidence was "generally consistent" with the RFC, and when there was no reason to believe further analysis could advance the plaintiff's claims, any "error is harmless because the claimant cannot show prejudice stemming from the ALJ's failure").

### B.     The RFC

Next, Plaintiff combines the "narrative discussion" and "function-by-function analysis" requirements in the RFC assessment to argue that the ALJ erred by failing to explicitly discuss Plaintiff's capacity to lift, carry, and sit.  (ECF No. 10 at 7-9 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996).)  The Court finds no reversible error.

#### 1.     RFC Requirements—In General

To proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC.  That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting.  20 C.F.R. § 404.1545(a)(1).[14]  The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations."  *Id*.  The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record.  *Id*. § 404.1520(e).

##### a.     Function-by-Function Analysis

SSR 96-8p clarifies that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p, at *3.  The ALJ must consider the claimant's "limitations and restrictions of physical strength" and define the claimant's "remaining abilities to perform each of the seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling."  *Id*. at *5; *see also* 20 C.F.R. § 404.1545(b).

At step four, the RFC is not expressed initially in terms of exertional category (sedentary, light, etc.) because the focus is on whether the claimant can do their past work

---

[14] *See generally* 20 C.F.R. § 416.945 for Title XVI.

13

as actually performed. SSR 96-8p, at *3. The function-by-function assessment helps with this, as a past job may not require the full range of abilities implied by an exertional level. *Id.* At step five, in contrast, the "RFC must be expressed in terms of . . . the exertional categories . . . ." *Id.* "However, in order for an individual to do a full range of work at a given exertional level, . . . the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level." *Id.* As such, "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." *Id.* Without this analysis, the ALJ may "either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4.

It is not reversible error for an ALJ to fail to engage in "an explicit function-by-function analysis" where the ALJ does not overlook a claimant's problems in a functional area and simply finds the evidence does not support a limitation. *Hendron v. Colvin*, 767 F.3d 951, 956-57. Where this Court can follow the ALJ's reasoning and determine that correct legal standards were applied, "merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166.

### b.  Narrative discussion

Meanwhile, the "narrative discussion" requirement merely dictates that the ALJ include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." SSR 96-8p, at *7. Categories of evidence include (1) objective medical evidence, (2) medical

opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a).[15]

The ALJ violates this duty when her decision utterly fails to specify how she has accounted for impairments she found to be severe. *See, e.g.*, *Veronica M. H. v. Kijakazi*, No. 20-CV-460-JFJ, 2022 WL 709184, at *4 (N.D. Okla. Mar. 9, 2022). Conversely, the narrative discussion is adequate "where the ALJ discussed all of the relevant medical evidence, none of the record medical evidence conflicted with the RFC, and substantial evidence in the record supported the RFC." *Cochran v. Colvin*, No. 13-CV-726-GKF-FHM, 2015 WL 966495, at *3 (N.D. Okla. Mar. 4, 2015) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) and *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. 2006) (unpublished)).

### 2. The RFC Analysis in this Case

Here, Plaintiff argues the ALJ's "decision does not contain any discussion of how the evidence supports the ALJ's implied findings" (ECF No. 10 at 8) and omits a function-by-function analysis of Plaintiff's capacity to lift, sit, or carry (ECF No. 15 at 1). Again, Plaintiff fails to show any reversible error.

#### a. The Function-by-Function Analysis

Even to the extent the ALJ failed to engage in an explicit function-by-function analysis, she did not overlook Plaintiff's problems in any functional area; instead, the decision indicates that the ALJ simply found the evidence did not support certain limitations. *See Hendron*, 767 F.3d at 956-57.

---

[15] *See generally* 20 C.F.R. § 416.913 for Title XVI.

In her decision, the ALJ assessed Plaintiff's ability to sit and lift/carry throughout her RFC analysis. The ALJ discussed Plaintiff's testimony regarding pain, as well as her testimony that she could only work in four-hour shifts; could not lift over eight pounds; could not handle anything; could only sit for 15-20 minutes due to her chair at work being uncomfortable; and was most comfortable in a reclining position, where she spent most of her time. (R. 22.) The ALJ went on to consider medical evidence regarding Plaintiff's back abnormalities and pain; her conservative treatment; her ability to complete daily activities; her comfort, muscle strength, and balance; and the strength and functionality of her upper extremities. (R. 23-24.) The ALJ also discussed the opinion of Dr. Williston, who opined regarding Plaintiff's ability to sit and lift/carry. (R. 24 (citing R. 413).) While the ALJ did not list every limitation found by Dr. Williston, she clearly considered them,[16] and she described them as "profound." (*Id.*) Moreover, the ALJ heard the alternative hypotheticals offered by Plaintiff's counsel at the hearing, which included "sitting less than two hours out of an eight hour work day," needing to "lie down or recline six hours or more during the eight hour work day," and "[m]aximum lift and carry . . . limited to less than 10 pounds." (R. 55.)

In light of this evidence, the ALJ found Plaintiff with the capacity "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) <u>except</u>, in an 8-hour day, she can stand and/or walk for a total of 4 hours" and "can occasionally push and/or pull with the bilateral upper and lower extremities," along with other limitations. (R. 21 (emphasis added).) By adopting the regulation's definition of light work <u>except</u> for its definition of standing or walking, the ALJ explicitly found Plaintiff limited to "lifting no more than 20

---

[16] For instance, the ALJ explicitly found that the "marked limitations in sitting, standing, and walking indicated by Dr. Williston" were contrary to other evidence. (*Id.*)

pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).[17] The ALJ rejected jobs in the light category that "require[] a good deal of walking or standing" even though the weight lifted may be small. *See id.* The ALJ also clearly rejected any "inability to sit for long periods of time." *Id.*

Because the ALJ did not overlook any limitations or restrictions that would narrow the type of work Plaintiff can do, and because the undersigned can otherwise follow the ALJ's reasoning to determine Plaintiff's limitations in sitting, lifting, and carrying, any failure to define Plaintiff's RFC using every single strength demand was, at most, harmless error.

### b. The Narrative Discussion

The ALJ's decision also met the "narrative discussion" requirements at the RFC phase. After setting forth her RFC conclusions, the ALJ outlined numerous pages detailing her analysis and understanding of the evidence. (R. 21-24.) This included a consideration of Plaintiff's symptom testimony (R. 22), the objective medical evidence (R. 23), and the opinion evidence contained in the record (R. 24). Such evidence provided adequate support for the ALJ's RFC findings, as well as appropriate reasoning for why certain allegations were rejected.

### C. The Williston Opinion

Finally, Plaintiff criticizes the ALJ's evaluation of Dr. Williston's medical opinion. (ECF No. 10 at 9-10.) The Court finds no error.

---

[17] *See generally* 20 C.F.R. § 416.967 for Titles XVI.

17

### 1. Medical opinions—Generally

A medical opinion is a statement from a medical source about what a claimant can still do despite their impairment and whether they have one or more impairment-related limitations or restrictions in their abilities to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). When considering a medical opinion, an ALJ does not defer or give any specific evidentiary weight to the opinion. *Id.* § 404.1520c(a).[18] Instead, the ALJ evaluates the "persuasiveness" of the opinion by considering five factors—(i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant; (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(a) & (c).

Of those five factors, the ALJ must always explain how she considered only two—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Consistency is more external—"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The ALJ is required to explain how the other factors were weighed only when there are two or more differing medical opinions about the same issue that are equally well-supported and consistent with the record. *Id.* § 404.1520c(b)(2)-(3).

---

[18] *See generally* 20 C.F.R. § 416.920c for Title XVI.

Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," as the "ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (quoting *Howard*, 379 F.3d at 949). Instead, to the extent "the RFC assessment conflicts with" a medical opinion, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p, at *7.

### 2. The ALJ's Evaluation of the Williston Opinion

Dr. Williston was Plaintiff's general practitioner, who completed a one-page, check-the-box form on May 25, 2022. (R. 413.) On that form, Dr. Williston indicated that Plaintiff could sit less than two hours, could stand/walk less than two hours, needed to lie down or recline six or more hours, and could lift/carry less than 10 pounds. (*Id.*) Dr. Williston further noted that Plaintiff's obesity contributed to her limitations. (*Id.*) When asked "WHAT ARE THE MEDICAL FINDINGS THAT SUPPORT YOUR ASSESSMENT?," Dr. Williston responded with four words—"MRI findings, PM&R evaluation." (*Id.* (apparently referring to a physical medicine and rehabilitation evaluation).)

In her decision, the ALJ analyzed Dr. Williston's opinion as follows:

> I do not find persuasive the May 2022 opinion of treating provider Dr. Williston, MD because it is insufficiently supported and inconsistent with the longitudinal record. As rationale, she indicated only "MRI findings, PM&R evaluation". This provides insufficient detail to substantiate the rather profound limitations in her assessment. Moreover, Dr. Williston's assessment is not entirely consistent with longitudinal record.
>
> For instance, in contrast to the marked limitations in sitting, standing, and walking indicated by Dr. Williston, the claimant presented as comfortable, and exhibited no abnormality in gait, muscle strength, or reflexes in a September 2020 examination. An October 2020 note also indicates that the claimant was independent in daily activities, and she presented as comfortable and with a normal gait. Subsequent treatment notes, including

19

> those from Dr. Willison, contain few, if any, physical examination findings, such as an abnormal gait, consistent with the profound limitations asserted by Dr. Williston.

(R. 24 (citations omitted).) This analysis explicitly articulates how the ALJ analyzed supportability—pointing to Dr. Willison's inadequate explanation for her opinion—and explicitly articulates how the ALJ analyzed consistency—contrasting the opinion with Plaintiff's other examination notes and exams.

Plaintiff complains about the explanation by pointing out ways in which she thinks other evidence is contrary to that cited by the ALJ. (ECF No. 10 at 9-10.) Yet, the ALJ considered all this evidence and simply disagreed with Plaintiff's interpretation. A reasonable mind might accept the evidence cited by the ALJ as adequate to support the conclusions in this case. *Biestek*, 139 S. Ct. at 1154. Thus, substantial evidence supports the ALJ's decision, and the Court cannot substitute its opinion for that of the ALJ.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 25th day of March, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT